IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. JOHN R. LAYMON, JR., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 05-169 ) Judge Nora Barry Fischer ) |
| BOMBARDIER TRANSPORTATION (HOLDINGS) USA, INC, et al., | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

**I.   Introduction**

Currently before this Court are several motions in limine (Docket Nos. 73, 77, and 81) filed by the parties. Having heard oral argument on certain of the motions on July 15, 2009 (*see* Docket No. 90) and additional argument at the final pretrial conference on July 16, 2009 (*see* Docket No. 91), and after consideration of the parties' submissions, the Court addresses three of the outstanding motions (Docket Nos. 73, 81, and 83) in this consolidated Memorandum Opinion and Order.[1]

**II.   Procedural and Factual Background**[2]

In 1995, Defendants Bombardier Transportation (Holdings) USA, Inc. and Bombardier

---

[1] Pursuant to the Court's rulings at the exhibit hearing held on July 15, 2009 (Docket No. 90) and the final pretrial conference on July 16, 2009 (Docket No. 91), the Court held in abeyance its rulings on Defendant's Motion in Limine at Docket No. 75 pending further briefing by the parties, and Plaintiff's Motion in Limine at Docket No. 79 until the time of trial. (Docket No. 91).

[2] As the parties are intimately familiar with the facts of this case, the procedural history and factual background included herein is only that which is necessary for background to the instant motions. For a more detailed recitation of the facts and procedural history, see the Court's Memorandum Opinion and Order on Defendant's Motion for Summary Judgment, filed on March 23, 2009. (Docket No. 55 and 56); *see also Laymon v. Bombardier Transp. (Holdings) USA, Inc.*, Civ. A. No. 05-169, 2009 U.S. Dist. LEXIS 24403 (W.D. Pa. Mar. 23, 2009).

Transportation ("Defendant") entered into a contract with the San Francisco Bay Area Rapid Transit ("BART") wherein Defendant agreed to recondition BART's rail cars. (Docket No. 55 at 4). The project was funded, in part, by the United States Department of Transportation ("DOT"). (*Id.*). Pursuant to federal regulations and the BART contract, Defendant was required to certify that it had complied with the DOT's Disadvantaged Business Enterprise ("DBE")[3] program relating to the participation of DBEs on the project. (*Id.*). BART and the DOT worked together throughout the course of the project to monitor Defendant's DBE participation and compliance. (*Id.*). As part of the program, Defendant was required to submit monthly DBE utilization reports to BART, including in each report the amounts awarded to DBEs as well as the amounts actually paid during each month. (*Id.* at 6). The numbers in these reports, submitted with Defendant's invoices, were required to be accurate under the BART contract and were forwarded to the DOT to allow the DOT to evaluate nationwide DBE participation. (*Id.*).

In early 2001, Defendant contracted with Plaintiff John R. Laymon, Jr.'s ("Plaintiff) company, JRL Enterprises, Inc., DBE certified by BART, to perform reconditioning work on rail cars. (*Id.* at 7). JRL's work began in March of 2001. (*Id.* at 8). From September of 2001 through November of 2002, Defendant submitted the required DBE status reports to BART certifying the amount that JRL had been awarded and paid. (*Id.*). Plaintiff claims that Defendant reported to BART

---

[3] A DBE is defined as a for-profit small business that is (1) at least 51 % owned by one or more individuals who are both socially and economically disadvantaged or, in the case of a corporation, in which 51% of the stock is owned by one or more such individuals; and (2) whose management and daily business operations are controlled by one or more socially and economically disadvantaged individuals who own it. 49 C.F.R. § 26.5. A socially and economically disadvantaged individual means any individual who is a citizen of the United States and who is determined to be socially and economically disadvantaged. *Id.* The regulations provide a list of ethnicities that are rebuttably presumed to be socially and economically disadvantaged. *See id.* Additionally, one may be found to be disadvantaged by the Small Business Administration at such time as the Administration designates. *Id.*

that the value of the amount of JRL's work on the project was $3,378,296.00, while the work performed by JRL was allegedly only $981,251.00. (*Id.* at 9). Plaintiff also contends that the planned award amount included not only the $981,251.00 paid to JRL but also the cost of equipment purchased directly by Defendant, despite the fact that Defendant knew that only labor and materials paid for by the DBE were to be included. (*Id.*). Thus, Plaintiff claims Defendant overstated the amounts awarded and paid to JRL and that these numbers were used by BART to determine whether Defendant had met its DBE goals on the project. (*Id.* at 9-10).

The instant lawsuit was filed by Plaintiff under seal on February 14, 2005. (Docket No. 1). After the federal government declined to intervene on March 17, 2006 (Docket No. 10), the Court entered an order on April 3, 2006 directing that the Complaint be unsealed and served upon Defendant. (Docket No. 11). Plaintiff filed an Amended Qui Tam Complaint on September 11, 2007, based upon Defendant's alleged false statements concerning Plaintiff's participation on the BART project claiming violations of the False Claims Act, 31 U.S.C. § 3729, and the California False Claims Act, Cal. Gov. Code. § 12650. (Docket No. 31). The Court denied Defendant's motion for summary judgment on both claims on March 23, 2009. (Docket No. 56). However, Plaintiff's claim under the California False Claims Act was dismissed with prejudice on July 8, 2009 for lack of jurisdiction on motion of Defendant. (Docket No. 84). This matter is currently set for jury selection and trial to begin on August 17, 2009. (Docket No. 61). The motions in limine addressed herein were filed on June 30, 2009 (Docket Nos. 73, 77, and 81) and briefs in opposition were filed on July 14, 2009. (Docket Nos. 85, 87, and 89).

**III.**     **Discussion**

        A.     *Defendant's Motion in Limine to Exclude Evidence of Damages to the MBE/DBE*

*Programs of the Federal Government (Docket No. 73)*

      i.      Overview of Arguments

Defendant moves to exclude evidence of damages to the MBE/DBE programs of the federal government on the basis that Plaintiff has not proffered a witness from the federal government with the requisite personal knowledge of the MBE/DBE programs who would be able to testify as to the damages to those programs. (Docket No. 74 at 3). A witness outside the Department of Transportation ("DOT") would not have knowledge, Defendant contends, of any actual damage to the programs; therefore, he or she could not testify under Federal Rule of Evidence 602 as to actual damages. (*Id.*). Defendant further argues that because any opinion testimony on this topic would be of a technical nature relating to the federal government's contracting power in regard to its DBE program, a lay witness may not so testify under Rule 701. (*Id.*). Therefore, because Plaintiff has not proffered an expert on the issue of actual damages, there is no witness that should be permitted to testify on this matter. (*Id.*).

In response, Plaintiff contends that Donald Deemer, a senior civil rights officer at BART (hereafter "Deemer"), will testify as to the purpose of the DBE program, the falsity of Defendant's statements, and the damage to the program as a result of those statements. (Docket No. 89 at 1). Plaintiff argues that Mr. Deemer is uniquely qualified to testify as to these facts as he is responsible for administering and overseeing the DBE program for BART (*Id.*). Because BART's DBE program is the federal program, Mr. Deemer's personal knowledge satisfies the "personal knowledge" requirement of Rule 602. (*Id.* at 2). Plaintiff further argues that Mr. Deemer is an expert in the DBE program according to Rule 702 as his position focuses on the program. (*Id.* at 3). Moreover, as is the case here, where there is no tangible benefit to the federal government by the DBE program, but

4

rather an intangible lost benefit that may be difficult to quantify, the appropriate valuation of damages is the amount the government actually paid to Defendant. (*Id.*). Plaintiff states that Mr. Deemer, in addition to Steven Proctor, Susan Presley, and Christopher Gan,[4] can all testify regarding the amount paid to Defendant. (*Id.* at 4). Therefore, Plaintiff argues, these witnesses may testify as they have personal knowledge concerning the DBE program, the effect of Defendant's false statements on the same, and the quantity of that effect. (*Id.*).

ii. Plaintiff's Proffers and Testimony to Date

In his Witness List and Offers of Proof (Docket No. 62), Plaintiff proffers that Donald Deemer will testify as to the overall structure of BART's DBE program and the requirements of the BART and federal DBE program. (Docket No. 62 at 1). Mr. Deemer's duties, as the senior civil rights officer and DBE program supervisor, were to evaluate and monitor BART's contracts for DBE participation. (Docket No. 45 at 6: 7-25). Plaintiff states that Deemer will testify to the importance of accurate DBE status reports from Defendant and how those reports are used by BART and the federal government. (*Id.*). At his deposition,[5] Mr. Deemer testified that BART's DBE program is the federal program, as implemented by BART and approved by the DOT. (Docket No. 45-14 at 8: 7-9). To that end, he also stated that BART is required to provide the government quarterly reports demonstrating DBE participation, which were based on Defendant's DBE status reports. (*Id.* at 8:

---

[4] Steven Proctor was a BART project manager for the contract with Defendant, and in that role was responsible for the DBE program. (Docket No. 55 at 5). Susan Presley was also a BART project manager while she reviewed invoices submitted by Defendant for payment in connection with the contract. (*Id.*). Christopher Gan is employed by BART as a general accounting manager and was responsible for review and processing Defendant's invoices for payment and then submitting a request for payment through the ECHO system from the Federal Transit Authority. (Docket No. 52-3 at 1-2).

[5] Plaintiff has designated the entire deposition of Donald Deemer for use at trial in the event that Mr. Deemer is unavailable to testify in person. (*See* Docket No. 67 at 1).

16-23; 12:16-18). Defendant's alleged false statements were significant, Mr. Deemer testified, because they diluted DBE participation. (*Id.* at 13: 15-16). If BART were to discover that Defendant's reports were false, Mr. Deemer stated that BART was required to provide that information to the DOT, which could then debar Defendant from participation in future federal contracts. (*Id.* at 18: 12-23; 19: 2-9).

Plaintiff has also proffered additional BART employees, Steven Proctor, Christopher Gan, and Susan Presley, who will testify as to the amounts paid to Defendant for its work on the contract, in addition to how those payments were processed. (Docket No. 62 at 3-4). Specifically, Steven Proctor, as project manager for the BART contract, testified at his discovery deposition that Defendant was paid for work under the contract for completed, functioning cars. (Docket No. 45-11 at 6:9-14; 13:2-11). In his affidavit, Christopher Gan, as the general accounting manager for BART, stated that he has first hand knowledge of the federal funding sources and method of presentment and payments of invoices on the project. (Docket No. 52-3 at 1). To that end, he stated that he was responsible for reviewing and processing invoices submitted by Defendant for payment for work. (*Id.* at 2). Susan Presley stated at her discovery deposition that in her role as a project manager she started off as a financial analyst responsible for all of the financial budgets and later became the contract administrator. (Docket No. 45-12 at 7: 8-13). She also described how payments were made by BART to Defendant pursuant to a "milestone payment schedule" under the contract. (*Id.* at 8:16-22). Given the proffers as well as their testimony in the discovery phase, Plaintiff maintains that these three witnesses can testify at trial[6] regarding the amount of damages which can be awarded,

---

[6] The Court has been provided copies of the transcripts of the depositions of Steven Proctor, Christopher Gan, and Susan Presly which were taken on August 5, 2009 and videotaped for use at trial, preserving objections pending resolution of the parties' motions in limine.

calculated as the difference between what Defendant reported was paid to Plaintiff's company and what was actually paid. (*Id.*)

       iii.    Analysis

Pursuant to Rule 602, a witness may testify only to matters about which the witness has personal knowledge. FED. R. EVID. 602; *see also Brooks v. Am. Centennial Co.*, 327 F.3d 260, 268 (3d Cir. 2003). Defendant argues that only employees of the DOT would have personal knowledge of damages to the federal DBE program, therefore, the witnesses Plaintiff has proffered should not be permitted to testify as to the same. (Docket No. 74 at 3).

Mr. Deemer, as the BART officer in charge of monitoring the DBE program, has direct personal knowledge of the BART DBE program. BART's participation in said program is required and must be approved by the DOT. (*See* Docket No. 45-14 at 8-9, *passim*). Further, while Mr. Deemer testified that he recognized the difference between BART's DBE program and the federal government's DBE program, he clarified that he was administering the federal DBE program as applied to the BART-Bombardier contract. (Docket No. 45-14 at 8-9). Therefore, Mr. Deemer has the requisite personal knowledge to testify regarding such matters under Rule 602. *See Brooks*, 327 F.3d at 268. However, because Mr. Deemer is not an employee of the federal government, Mr. Deemer's testimony at trial will be limited to his knowledge of BART's DBE program, its relation to the federal DBE program, and the statutory and contractual penalties to which Defendant could have been subjected if the federal government had been informed of the false reports. The Court will now address Defendant's argument that Mr. Deemer's testimony should be excluded under Rule 701.

Rule 701, which draws the line between lay and expert opinion testimony, provides that a lay witness's testimony in the form of opinion is limited to those opinions which are rationally based

7

on the witness' perception, helpful to the jury's understanding of that testimony, and not based on scientific or technical knowledge within the scope of Rule 702. FED. R. EVID. 701; *see also Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 225 (3d Cir. 2008). With respect to lay opinion testimony of a business owner or officer, the advisory committee's note provides that "such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of particularized knowledge that the witness has by virtue of his or her positions in the business." FED. R. EVID. 701 Advisory Committee's Note (2000 amendments); *see also Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980)("[t]he modern trend favors the admission of [lay] opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination.").

In this Court's estimation, Mr. Deemer's deposition testimony and Plaintiff's proffer for his potential testimony at trial consist of matters within his personal knowledge and perceptions. To the extent that any of the statements by Mr. Deemer are opinions, this Court believes they are based on knowledge of the operation of the DBE program which he has obtained by virtue of his position as the civil rights officer in charge of the BART DBE program as contained in Defendants's contract with BART.[7] FED. R. EVID. 701 (advisory committee notes to the 2000 amends.)("Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge the witness has by virtue of his or her

---

[7]
In Deemer's position as a senior civil rights officer and BART's DBE program supervisor, his responsibilities included evaluating contracts, setting goals, monitoring contracts for DBE participation, and providing reports to BART managers or the BART board of directors. (Docket No. 45-14 at 6:7-8, 23-25; 7:1-2). To that end, Deemer is tasked with monitoring contractors to ensure they are making good faith efforts to meet DBE goals. (*Id.* at 7:19-25). Section P7.13 of the BART contract, titled "Disadvantaged Business Enterprise Participation," spells out BART's DBE program to which Defendant was required to comply. (Docket No. 49-10 at 13-19).

position in the business."). As Mr. Deemer's statements are derived from his knowledge and based on his perceptions as the contracting officer, his testimony shall not be excluded under Rule 701; however, it shall be limited to his knowledge of BART's DBE program.

With regards to the proffered testimony of Steven Proctor, Christopher Gan, and Susan Presley, these witnesses will be permitted to testify as to the amounts paid by BART to Defendant. These witnesses, by virtue of their positions as employees of BART, have the requisite personal knowledge about Defendant's work under the contract, how Defendant's invoices were processed and the procedure by which payments were submitted to Defendant. (*See* Docket Nos. 45-11, 45-12, and 52-3). To that end, where, as here, there is only an intangible benefit to the government which benefit is impossible to calculate, it is appropriate to value the damages to the government in the amount actually paid to the Defendant. *United States ex rel. Longhi v. Lithium Power Techs.*, Civ. A. No. 08-20194, 2009 U.S. App. LEXIS 15262, at *36 (5th Cir. July 9, 2009). Thus, these witnesses may testify as to the amounts paid to Defendant.

Accordingly, Defendant's Motion in Limine to Exclude Evidence of Damages to the MBE/DBE Programs of the Federal Government is GRANTED, in part, and DENIED, in part. It is granted to the extent that Mr. Deemer shall not testify in the form of opinion testimony or otherwise as to his assessment of damages to the federal government's DBE program. It is denied to the extent that Defendant seeks to completely exclude the testimony of Mr. Deemer, Steven Proctor, Christopher Gan, and Susan Presley. These witnesses may testify as to the scope of BART's DBE program, its general compliance requirements, the goals and effectiveness of the program, its relation to the federal DBE program as well as the amounts paid by BART to Defendant.

      B.      *Plaintiff's Motion in Limine to Exclude Evidence of Civil Penalties and Treble*

*Damages (Docket No. 77)*

      i.      Overview of Arguments

Plaintiff also moves to exclude evidence of civil penalties or treble damages at trial, becase, Plaintiff maintains, these issues are within the province of the Court. (Docket No. 77 at 1). Specifically, Plaintiff argues that any reference to potential civil penalties or treble damages would be extremely prejudicial as "it would have the natural effect of causing the jury's damage award to be lower, in light of the fact that any award it made could be trebled." (Docket No. 78 at 1-2). Plaintiff further argues that this result would hinder the goals of the False Claims Act and undermine the purpose of providing compensatory and punitive damages to the government. (*Id.* at 2). Additionally, it would be error to instruct the jury as to treble damages or other court-determined awards as it might pervert the jury's actual damages award. (*Id.*).

Defendant counters that, pursuant to Rule 403, evidence of the availability of civil penalties and treble damages is relevant to the jury's understanding of the issues to be determined. (Docket No. 85 at 3). Specifically, if the goal of Rule 403 is to prevent confusion, this evidence should not be excluded, especially because it is Defendant's position that there are no actual damages to the federal government in this case. (*Id.*). Moreover, a jury should not be asked to determine the number of false claims submitted without being instructed why it is doing so. (*Id.*). Defendant further argues that allowing the jury to know why they are tasked with determining the number of false claims alleviates any worries about confusion or misleading the jury. (*Id.* at 4).

      ii.     Analysis

The jury's role in this case will be to determine the number of violations and fix the amount of actual damages suffered by the United States, if any. *United States ex rel. Miller v. Harbert*, Civ.

A. No. 95-1231, 2007 U.S. Dist. LEXIS 17791, at *7-8 (D.D.C. Mar. 14, 2007). The application of FCA's statutory penalties and trebling of actual damages are for the Court to determine. *Id.* Furthermore, the United States Supreme Court has strongly implied that a jury in FCA cases is generally not to be instructed on the possibility of treble and civil penalties. *See Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 131-32 (2003). That is, because a jury would be left open "[to improperly increase or decrease an actual damages award] if it finds liability, its instruction is to return a verdict for actual damages, for which the court alone then determines any multiplier." *Cook County*, 530 U.S. at 132. To instruct a jury on potential trebling of damages and statutory penalties would serve to inhibit the goals of awarding such damages, namely, to deter fraud against the federal government and punish those who commit it. *Miller*, 2007 U.S. Dist. LEXIS 17791, at *8-9. There is also a great weight of authority in a variety of other contexts establishing a general rule that it is error to instruct a jury as to treble damages, attorneys fees, or other court-determined awards that might corrupt the jury's damage determination. *See Gulfstream III Assocs., Inc. v. Gulstream Aerospace Corp.*, 995 F.2d 425, 433 (3d Cir. 1993)(treble damages in an antitrust case); *Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240, 1242 (5th Cir. 1974)(same); *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1308 n.7 (7th Cir. 1987)(statutory penalties in a RICO case); *Brooks v. Cook*, 938 F.2d 1048 (9th Cir. 1991)(attorney fees under 42 U.S.C. § 1988); *see also Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 315 (3d Cir. 2006)(back pay in a Title VII discrimination case is to be determined by the court). The rationale of those cases applies here.

      Further, the fact that an award amount may be tripled by the Court has no relevance in determining the extent to which the government was injured by alleged false claims. *Miller*, 2007 U.S. Dist. LEXIS 17791, at *7-8. Therefore, evidence of civil penalties and treble damages is not

admissible at trial. Accordingly, Plaintiff's Motion to exclude evidence of civil penalties or treble damages is GRANTED.

      C.    *Plaintiff's Motion in Limine to Exclude Evidence of DBE Goals (Docket No. 81)*

          i.    Overview of Arguments

Plaintiff moves to exclude evidence of Defendant's overall alleged compliance with DBE goals on the basis that such evidence is not relevant to whether Defendant's false claims had a natural tendency to influence agency action or were capable of influencing the government's funding decision. (Docket No. 81 at 2). Moreover, Plaintiff argues, the issue of whether Defendant met its DBE goals is not at issue and is extraneous to the issue of whether Defendant's false claims were material. (Docket No. 82 at 2). Further, Plaintiff contends that permitting Defendant to offer this evidence would be a waste of time and resources and should be excluded under Rule 403 as it would tend to confuse the jury by deflecting its attention away from the actual false claims. (*Id.*).

Defendant responds that evidence of its DBE compliance is relevant to the issue of whether its alleged false claims are material under the FCA. (Docket No. 87 at 2). Specifically, Defendant states that it intends to introduce this evidence to show that the false claims were not material to the government's decision to pay because, by the time of Plaintiff's participation on the project, Defendant had already met its contractual DBE requirements. (*Id.* at 2-3). Moreover, Defendant intends to show that before Plaintiff's business was added to its DBE reports, Defendant had already surpassed the contractual DBE goal. (*Id.* at 3). Thus, Defendant argues, evidence of its DBE compliance is relevant as its probative of the government's decision to make payment. (*Id.*).

          ii.    Analysis

Federal Rule of Evidence 403 permits a court to exclude evidence when its probative value

is substantially outweighed by unfair prejudice. FED. R. EVID. 403. Prejudice, within the purview of this rule, is the sort "which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts." *Goodman v. Pa. Turnpike Comm'n.*, 293 F.3d 655, 670 (3d Cir. 2002)(quotation omitted). It does not simply mean damage to the opponent's case; that is, the evidence must be unfairly prejudicial, not just prejudicial. *Goodman*, 293 F.3d at 670 (emphasis added); 1 MCCORMICK ON EVIDENCE § 185 at 645 (John W. Strong, et al. eds., 5th ed. 1999). Under the FCA,[8] a statement or claim is material "'if it has a natural tendency to influence agency action or is capable of'" influencing the government's funding decision. *United States ex rel. Wilson v. Kellogg, Brown & Root, Inc.*, 525 F.3d 370, 378 (4th Cir. 2008)(quoting *United States ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1460 (4th Cir. 1997)); *see also* 31 U.S.C. § 3729(b)(4); *Neder v. United States*, 527 U.S. 1, 16 (1999); and *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 914 (4th Cir. 2003). The issue of materiality focuses on the potential effect of the false statement when it was made, rather than the actual effect after it is discovered. *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 446 (6th Cir. 20050; *Harrison*, 352 F.3d at 913, 916-17. This test for materiality is consistent with the plain meaning of the FCA. *United States ex rel. Longhi v. Lithium Power Techs.*, 2009 U.S. App. LEXIS 15262, at *27 (5th Cir. July 9, 2009).

In this Court's estimation, evidence of Defendant's actual DBE participation figures, whether those figures met or exceeded the goal as alleged by Defendant, is relevant to the issue of materiality. Specifically, the evidence of Defendant's alleged compliance with DBE goals will be probative of

---

[8] The definition of material under the False Claims Act, 31 U.S.C. § 3729, remains unchanged in the wake of the enactment of the Fraud Enforcement and Recovery Act of 2009, 111 P.L. 21, 123 Stat. 1617 as it amends the False Claims Act.

13

the government's decision to make payment, as the right to receive payment by Defendant was conditioned upon its DBE compliance. The Court also agrees with Defendant's argument that this evidence can only be excluded under Rule 403 if its probative value is substantially outweighed by unfair prejudice. To that end, simply because this evidence tends to hinder Plaintiff's case while perhaps aiding the Defendant's case is not a proper ground for exclusion. *Goodman*, 293 F.3d at 670. The evidence of DBE compliance would not confuse the jury, rather, it would place Defendant's false statements in the context in which they were made, thereby allowing the jury to view the picture as a whole. Additionally, evidence of Defendant's overall DBE compliance is probative of Defendant's scienter[9] in submitting the false DBE reports, given that Defendant maintains that the errors in the reports were an "honest mistake." (*See* Docket No. 46 at 7-8).

Therefore, Plaintiff's Motion in Limine to exclude evidence of Defendant's overall DBE compliance is DENIED.

## IV.   Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED:

(1) Defendant's Motion in Limine to Exclude Evidence of Damages to the MBE/DBE Programs of the Federal Government (Docket No. [73]) is GRANTED, in part, and DENIED, in part. It is granted to the extent that Donald Deemer shall not testify in the form of opinion testimony or otherwise as to his assessment of damages to the federal government's DBE program. It is denied to the extent that Defendant seeks to completely exclude the testimony of Donald Deemer, Steven

---

[9] Under the FCA, a defendant's scienter means that a person, with respect to the alleged false information, has actual knowledge of the information, acts in deliberate ignorance of the truth or falsity of the information, or acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A); *see also United States ex rel. Hefner v. Hackensack Univ. Medical Ctr.*, 495 F.3d 103, 109 (3d Cir. 2007).

Proctor, Christopher Gan, and Susan Presley. These witnesses may testify as to the scope of BART's DBE program, its general compliance requirements, the goals and effectiveness of the program, its relation to the federal DBE program as well as the amounts paid by BART to Defendant;

(2)  Plaintiff's Motion to Exclude Evidence of Civil Penalties or Treble Damages (Docket No. [77]) is GRANTED; and

(3)  Plaintiff's Motion in Limine to Exclude Evidence of DBE Goals (Docket No. [81]) is DENIED.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


**CC/ECF:**   All Counsel of Record
**Dated:**    August 11, 2009